Case 14-5299, Jihad Dhiab, detainee, Guantanamo Bay Naval Station, and Shaker Amir, as next friend of Jihad Dhiab, v. Barack Obama, President of the United States, et al., appellant, First Corporation et al., Ms. Dorsey for the appellant, Mr. Schultz for the appellee's First Corporation, and Mr. Eisenberg for appellee Jihad Dhiab. Good morning, Your Honors. May it please the Court, Katherine Dorsey on behalf of respondents, appellant. The District Court here ordered the public disclosure of 32 videos, videos that depict Petitioner Dhiab's forced cell extraction and or internal feeding, despite the Executive Branch's determination that those videos are properly classified as secret, because their disclosure is reasonably expected to cause serious damage to national security. The District Court ordered that public disclosure without any determination that the videos were not properly classified, and did so despite its recognition that no other court in the context of the Guantanamo litigation had ordered the public disclosure of classified information over the government's objection. The District Court, in doing so, here, relied on the Press Enterprise case. Ms. Dorsey, before we get to this, unless you're going to do what the government quite appropriately did in the last case and admit a question regarding jurisdiction, we're going to have to start with the jurisdictional question. I assume you're not now willing to admit that, in fact, we don't have jurisdiction over this case? That's correct, Your Honor. So you agree with me that this is not a final judgment itself, leaving aside the collateral order doctrine, this is not final judgment under 1291, you agree? That's correct, Your Honor. And that's because there is still some stuff for the District Court to do. That's correct. One is redactions, one is agreeing on a public release program, et cetera, right? Correct. And the government is not prepared now to say that if they can't reach agreement on either of those, it'll just give up and do whatever the interveners want, correct? That's correct. You'll appeal and you won't just give up and do whatever the District Court says. You'll appeal again. That's correct. So we have the problem of potentially hearing this case again. If you lose, you would hear this case yet again on the question of whether the redactions are appropriate, et cetera, right? That's right, isn't it? That is, if we were to decide this case now against you, that redactions are appropriate or not, et cetera, correct? Potentially, yes. So your only hope here then is the collateral order doctrine. That's correct, Your Honor. And or mandamus. Well, we'll get to a good point and we'll get to both of them. So now I'm just trying to clear away some of the underbrush here. The collateral order doctrine requires three things. The third is the one I'm talking about. Assume the District Court resolves the redactions and assume the District Court resolves all of them in your favor. And at that time, the District Court says, okay, I'm done. Now release the documents. Why can't you appeal that? Because even if the redactions are done, you're saying, oh, just ask the redactions issues in order. That's right. Why can't we wait? That's what the final judgment rule is all about. We wait until the case is really done, where the District Court really orders you to disclose it now, and you file your appeal and, of course, they attend and stay in motion at that time. Because we think the District Court here has already conclusively resolved that the redact... Yes, that's right. Yes, but that is... That's the first prong. That's the first prong. I am on the third prong. I agree with you on the first prong or at least enough for purposes of this. I agree with you on the second, at least for purposes of this. I am hung up on the why this is effectively unreviewable. If you would wait until matter is resolved, the redaction dispute is over, the public access dispute is over, and at that point, you then appeal. Why is it, would it be unreviewable at that time? Two points, I think, Your Honor. The first is that even if the District Court just were to, say, approved all the redactions, there's not necessarily, or wouldn't be necessarily, another order ordering disclosure that we could review because the District Court has already ordered the videotapes unsealed. No, no. It says that, I'm just reading the order, videotapes shall remain under seal until the court has approved the joint proposal. Right, but what I'm hypothesizing, Your Honor, is that the District Court could just issue an order once the lawyers are all sitting back there, they will immediately run and ask for a stay. If a stay is not given, which was given in this case, pending appeal already, if that's not good enough, they will immediately run upstairs, or downstairs, I don't know where the District Court is, and they will immediately seek a stay here. And if this court thinks you're right, it will grant you a stay. I don't mean this particular panel, but the court. If it thinks you're wrong, then you're going to lose anyway. So, I don't, this is what the meaning of the words are, effectively, unreviewable on appeal. I don't understand why it's not reviewable on appeal. Well, also, the other side has not, we'll say, the other side has not challenged, I understand, its jurisdiction, obviously, and the court has addressed that. Well, it depends on who the other side is. Mr. Diab actually thinks that there is no jurisdiction here. They've said that. They've only opposed it on the first prong. Well, that's what I wanted to ask you about that, because I know Chief Judge Garland was assuming, or they might agree with you on that, but I'm not sure what to do with the fact that at least Mr. Diab thinks the scope of redactions could potentially be broader than, I think, the interveners, or you seem to think it is, and why, imagine if this court were to determine we didn't have jurisdiction at this stage and you were to go back through the redaction process, would you not consider it open to you to fight about particular redactions beyond the case and names type information that the district court references in the order? Would you feel under no, you would have no opportunity to go back and say, look, look at this right here. Please, this can't go out. Here's why. This isn't already out there, as Mr. Diab would say. I think, Your Honor, the district court's decision is clear that the district court rejected all our arguments about healing portions of the video that were classified. If that's what you would do as a government lawyer, I guess my assumption is that if going through the redaction process in the course of taking things out, you're probably going to have some disagreements about the scope of what's appropriately redacted, and if in that process you saw something that was particularly of concern, you really wanted to make sure the district court focused on that, I bet you you would think you had the procedural opportunity to flag that again for the district court and say, in the course of fighting over redactions with them, say, and by the way, look, please look one more time at this. But, Your Honor, even if we just – You could do that. No, I don't think that's right, Your Honor. You wouldn't do that. You're assuming the opportunity to even try that in the district court? I'd like to explain why, Your Honor, because even if we take the broadable possible scope of the redactions permitted by the district court order, even if we agreed to whatever interveners and petitioners agreed with the appropriate redactions, there's still information in the videos that we think cannot be released, and that is what the district court has not permitted us to do, and that litigation would not cover that scope. I understand that there's some things that I think the district court – again, I guess changes of mind can always happen, but it's this that the district court's committed to, but really what is being disclosed could change in this redaction process, could it not? In terms of the redactions of the identifying information that the district court permitted, yes, no doubt there would be litigation over those specifics, but even beyond that, no matter what scope there is, that still the government is going to object to the underlying videos being released because there's classified information there that is not – This still only gets you past number one, and I'm still stuck on number three. So why isn't this reviewable at the end? Like any other case where a court orders – releases something, why don't we wait until the order actually occurs? Well, Your Honor, the order has occurred in that the district court has determined that it's not going to revisit the unsealing. When the action is terminated, the litigation has ended, leaving nothing more for the court to do. So we're definitely not at that stage yet. So why can't we wait until that stage? How do you satisfy the effectively unreviewable requirement of the collateral order document? Well, I believe, for one, because – two reasons, again, which I think I didn't get to the second one yet. The court has granted the order unsealing, so I think – Your first reason was that the other side agrees with you, and that, as you know, carries no weight because Supreme Court has told us that it's up to us to decide jurisdiction, correct? That's what – correct, yes. So we're hoping for number two here. So then I have two points beyond that. That makes three. So one is that the court has – the district court has granted the unsealing order. There's nothing necessarily more that the court has to – I know it didn't set a specific date for the disclosure. No, no, it said – I just read you that it will remain sealed until. Isn't that right? Yes, and it also issued – it also stated that it granted the motion that – – shall remain under seal until the court has approved the joint proposal. If you don't disclose it right today, you're not in contempt of the court, correct? That's correct, Your Honor, but it did state in the same order, the October 3rd order, it stated that the unopposed motion to intervene is granted and the order to – the motion to unseal is granted with the following modifications. And then on October 9th, again, it noted that it had granted the motion to unseal. And again, so even though it dates – Are you fighting me on the question of whether it's a final or are you fighting me on the question of whether it's unreviewable? Which are you – which do these points go to? I think it – I mean, the way you're reading the final, I think it goes to both, Your Honor. All right. Tell me why you can't wait until there's actually an order requiring you to unseal. The other problem is that the redaction process we've explained, that it's a tremendous burden to undergo the redaction process. It would take – DOD has estimated 1,200 million hours to – Now we're stuck up against at least two, but probably ten, Supreme Court opinions directly on this question. I'm going to read them to you, and then you can tell me how you can possibly distinguish this case. The first one, and the most important one, is Richardson-Merrill, where the court says, The possibility that a ruling may be erroneous and may impose additional litigation expense is not sufficient to set aside the finality of a requirement imposed by Congress. If the expense of litigation were a sufficient reason for granting an exception to the final judgment rule, the exception might well swallow the rule. Similarly, in the Laurel Lyons case, the court says, Effectively unreviewable occurs only where the order at issue involves an asserted right which would be destroyed if it were not vindicated. The possibility that a ruling may be erroneous and may impose additional litigation expenses are not sufficient. And then in the recent Supreme Court's opinion in Mohawk, the court says, That a ruling may burden litigants in ways that are only imperfectly repairable by appellate reversal has never sufficed to satisfy the collateral affordability. Do you know of any case where the court has ever held that the fact that the litigants have to go ahead and expend effort, time, money, that that is alone enough under the collateral order doctrine to make it effectively unreviewable? No, I don't, Your Honor, but the thing I would point to again here is that the court has ordered the videos unsealed. It has not set a date certain, but that notion that the videos are going to be unsealed, the cat is out of the bag. It has been enough for a collateral order. Well, I've been on several of those cases, and the meaning of the cat out of the bag meant that the document would be disclosed to the public. If we deny this appeal, if we say you don't have jurisdiction, the next thing that happens is not going to be that the photos or the videos will be disclosed. The next thing that will happen is we'll have an argument about redactions, and then the court will issue an order, and then if you don't get a stay, the cat will be out of the bag. But I don't think that's necessarily right, Your Honor. Let's say we go through the next step of the going through the redaction process. The parties give their joint proposal. The court could just say, stamp approved, and then what happens is we are obligated by the court's prior order to disclose the videos. If you tell the court that you'll need a stay at that moment and the court declines to grant you a stay, that sounds like a good mandamus claim. But we're not there yet. We're not anywhere near that. And given the court's willingness to give a stay on her own at this point, I really think that the suggestion that the court's going to hold you in contempt while you try to seek a stay is inappropriate, I think. Not inappropriate in a bad way, but I think that suggests a lack of understanding on the part of the district court, which the district court has not shown. So I don't see why you can't seek that. Can we go on to the mandamus question? I was a little uncertain what your strategy here is, because by the time you got to the reply brief, you dropped the mandamus argument. I thought it might be that you were afraid that if you won, you would be stuck with a clear and indisputable right test, which maybe you don't want this case decided by. Do you want us to consider mandamus as a potential for jurisdiction here? Yes, Your Honor, we do. All right. Then in that case, how do we get to the language of mandamus, which is almost identical to the third step of the collateral order doctrine? The third step of the collateral order doctrine, mandamus requires that there be no other adequate means to attain the relief desired. And the further statement that a writ will not be used as a substitute for the regular appeals process. So don't we have the same problem? You have another adequate means. You seek a stay here or in the district court, and you appeal when the case is over. Why doesn't mandamus lead to the same result as collateral order doctrine? Well, we don't think it does, Your Honor, because, again, we think the district court has made the clear determination here that these cases are going to be unsealed. And so that there is, if we can't take a collateral order appeal, there is no other means to get adequate relief, especially in light of the additional burden of having to conduct, complete the redaction. Can I ask you about that burden point? My recollection is, I don't remember the exact date, but the district court had given a relatively short time frame for the redaction process. Do you remember, was it weeks or months? I think it was about a week, if I recall. It was October 17th, and the date was October 9th. And obviously she stayed everything. What I want to understand is, is your burden argument just a burden argument, or is your argument that you couldn't, and have you made this to the district court, that you could not safely, in your view, consistent with your desire to protect at least the things that the order will let you protect. It just cannot be done, and so her time frame forces a relief. I didn't see this in your brief, but I was trying to figure out how that time frame factored into the burden. In terms of the original deadline she had set, yes, we indicated that we couldn't meet that burden in any event. And then we also explained that it was just a tremendous burden with the man hours, 12,000 man hours. So then if there were no jurisdiction now, would you have the ability to ask the district court, at least for the time you would need to engage in what I suspect would be a discussion-intensive redaction process, with at least Mr. DeHoff's counsel? Yeah, I mean, I don't know what the time frame would be. You're not hanging on that time frame as the basis for your irreparable injury if you're not allowed to appeal now. I mean, I think it's another factor that goes into the burden, but it's true. We don't know exactly what that time frame would be. In what form did you ask for more time? Did you ask for more time? Well, we asked her in the stay. We just explained in the stay. The stay was pending appeal. Yes. Well, that's not the stay. Did you ask her for more time to complete the redactions? No. No. We just said we couldn't complete it and did that in the process of asking for the stay, saying it was not feasible. So the district court has not made a judgment, final, unfinal, or anything else on the question of whether to grant more time. If you were to come in and say the Court of Appeals has held that there's no interlocutory jurisdiction, we have to go forward with the redactions, we can't do it within the time frame in light of the affidavit that you filed. That affidavit was filed only with the Court of Appeals or with the district court? The one on the man hours. That was filed both with the district court and the court. So if you said, in light of this affidavit, we are now going to go forward with the redactions, but we can't do it in a week or whatever it is, the district court would not say I've already ruled on that question. I don't believe so, Your Honor. We've exhausted ourselves on the exhaustion of jurisdiction question. Please proceed to the merits. We think the district court here, Your Honors, erred in relying on the Press Enterprise case to order the unsealing of the videos. We think that case is simply inapplicable here. Press Enterprise addressed whether there was a First Amendment right of access to criminal proceedings and whether such a right was limited by the judiciary's authority to seal certain proceedings and or records. But the issue here is not whether the judiciary has authority to seal unclassified records, for which there would be a presumptive First Amendment right of access, but whether the court can disregard an executive branch determination that these videos are classified and unseal them. So in other words, the Press Enterprise test was about sealing unclassified records and was not about unsealing classified records. So what is the test then? Are you saying, because you're not agreeing that the test is the test that we used in Amazin, I'm sure I'm mispronouncing that name, the 2012 case from this court, Amazin v. Obama. You're not agreeing that that's the test, or are you agreeing that that's the test? No. In this case, Your Honor, we don't think there is a First Amendment right to classified documents, and so that is the end of the matter because there are classified documents here. There's no inquiry for this court to conduct. You know, the First Amendment is not a FOIA action, and if the petitioner or the intervener here had brought a FOIA action, then in the normal scope of that, the court could look into whether, you know, verify whether the videos were properly classified and properly withheld under Exemption 1. But under the First Amendment, there's no similar test here. How would you articulate what the First Amendment issue is? Would we ask is there a tradition, logic, and experience relative to access to classified information or to information that is determined to be protected by laws external to the court, or do we ask whether there's a tradition of access to documents, or do we ask whether there's a tradition of access to documents, emotions, and habeas proceedings or quantum or habeas proceedings? What exactly is the First Amendment question in your view? How is it articulated? What would apply logic and experience to? Here, if you were applying that First Amendment test in First Enterprise, then you would look to whether there was a history of public access to classified information. What would the object of the Press Enterprise or the First Amendment test should be? And that is, are you saying the test here is whether there's history and experience with access to classified information, or do we look at the proceedings? There seems to be a fight about whether you look at the documents or whether you look at the proceedings. I think, Your Honor, you look at both. The case law suggests that you look at both. And so you look at whether there's a history of public access to the particular type of proceeding, and then in that proceeding whether there's a history of public access to classified proceedings or classified information in those proceedings. The district court here relied on, in addressing that prong of the First Amendment test in Press Enterprise, relied on Judge Hogan's decision in the In Re Guantanamo litigation and noted that that court had found that there was a history of public access to habeas proceedings, or, well, he concluded an access to civil proceedings generally, but did not specifically address habeas proceedings. But it also did not address classified proceedings. Your position is that no matter how central the document or the testimony is to the resolution of a court case, the court under no circumstances can disclose it if the government has stamped it secret. Is that right? That's your position. So if the government, if the document turns out to be a copy of the Gettysburg Address and the government has stamped it secret and says, this proves that Mr. Diab, in a criminal trial, this proves that Mr. Diab blew up the World Trade Center, and the court says there's nothing in that document that proves that, and this is the government's whole case, and since it's the central exhibit, and I know the government is lying about that document, completely lying, the court cannot disclose it. I just want to be clear about that. That's the government's position. Even if there is no, I'm going to use the phrase familiar to you, logical or plausible reason for the government's conclusion that it could reasonably be thought to harm the national interest. Absolutely no rational reason at all. The government's position is that the court, with respect to the documents that are fundamental to a decision in the courts, in the court cannot be disclosed. That's the government's position. Your hypothetical is the criminal context. Civil, I'm happy to do civil. I'm happy to do any context that you want. I want to go over to the civil on the theory that whatever Sixth Amendment rights, et cetera, don't apply, but assuming, if you would assume with me that the First Amendment applies to actions in civil as well as criminal, under those circumstances your position is that court has absolutely no authority, even if the government is A, irrational, or B, hiding something. Let's put it another way. Imagine that the document, instead of being the Gettysburg Address, in fact, is a video showing that, I have to choose this carefully so I don't get into any trouble, some famous politician robbing a bank with a machine gun without a mask. And that, by the way, this politician has nothing to do with foreign policy in any way or the national security in any way, just robbing, and it's a video. But the government seals the video, allows it to be used to convict the guy, but seals it calling it classified. The court cannot reveal it even though it is the basis of the court's determination. We're in a First Amendment just to get access to that document. Well, yes, that's right. That is our position. But, again, in this case, Your Honor, we don't think it makes a difference. No, it's not this case. No, I understand that's another argument, but I first want to know where we are here. So when you say a First Amendment case, take it out of that. But can the court, in its discretion, thinking that it's necessary for public confidence and integrity of the judiciary, disclose the document even without newspapers coming in and asking for it? So it's not First Amendment. It's the court's exercise of its discretion over its own proceedings. And the court in that case, I assume, sorry to answer your question without the question, but determines that it's not properly classified. Yes, my assumption is it's not properly classified either because it's not rational, has nothing to do with national security, or, number two, it's intended as a cover-up of something that obviously has nothing to do with national security. Then I think that's a very different case, Your Honor. I know that. Otherwise, I wouldn't ask you. But is the government's position that the court has no authority under those circumstances to apply any kind of test and must just accept the secret sample? No, I don't think that's our position, Your Honor. Here, I think what we're arguing is the First Amendment is not a proper vehicle here for getting, seeking access to these videos and that there's not a First Amendment right to documents that are stamped classified. And so this court should not conduct an inquiry. But if this court disagrees, you know, and thinks there should be an inquiry into whether the documents are properly classified, the court could do that. And we think the outcome here would be the same, that the district judge's order would have to be reversed, ordering the unsealing, because just like in a FOIA context, if you're looking at Exemption 1 to determine whether the documents are properly classified, if the court here were to review the declaration we filed, the Butler Declaration, that would provide ample authority for this court to decide that this information here is classified. Do you think we have as much authority, at least as much authority as we have in the FOIA context? Again, we don't think the First Amendment is the proper vehicle for this issue to be raised and litigated. We think the interveners here should have, if anything, if they want to litigate whether the information here is properly classified, the appropriate way to do that would have been for a FOIA request for the video. Well, could the district court on its own have decided, no one's asked me yet? Or even if they did ask me, I'm not going to do this based on the First Amendment, I'm going to do this on the integrity of judicial proceedings and my control. Would you agree that at least for that decision the rational and plausible test applies? I think that would make sense, yes, Your Honor. Why wouldn't the McGehee v. Casey standard apply, which is a little bit less deferential to the government? We don't think that case is applicable here in that that's a pre-publication CIA censorship review case, and that's a situation where the individual seeking release already has the information in his hand. But the logical and plausible or rational and plausible, we think it's a very similar standard between that and the context you have in FOIA too. So I'm not sure there's a great distinction between those two standards, Your Honor. I think in substance if you're applying that to look at whether the information is properly classified, the court's going to get the same result. Okay. We'll hear from the other side. We'll hear from Mr. Deob first. What's the order? From Hearst Corporation first. Are you going to address the jurisdictional question? Yes, I am. And I am John B. Eisenberg for Petitioner Deob. And I will be addressing the jurisdictional issues, and Mr. Schultz will be addressing the merits issues. Before we end, just to set it up, can you, as part of your jurisdictional argument, talk a little bit about what I understood to be your view of broader potential scope for the redaction process than I think the government understood it to be? I thought you said it could be at least discussing things that were – they may be able to protect things that are not already in the public domain. Yes. I was going to begin with the third prong, but why don't I start with that? Since we're there. Page 29 of the District Court's Memorandum of Opinion. This is page 226 of the unclassified appendix. This is where a judge – I'm sorry. Go to page again. I'm sorry. This would be 226 of the appendix.  I have her opinion here separately. I'm sorry. Go to page 29 of her opinion. Okay. And this is where the judge mentions adequate protection for identities and the like. And she says in the middle of the page, adequate protection can be provided by appropriate audio and visual edits, for example, screening names and voices, blurring faces and identifying portions of uniforms, and blacking out written materials on walls. I am quite confident that the government will seize upon those two words, for example, as a basis for arguing they can do redactions beyond blurring faces and blacking out names. This is what pretty much I expect we will be litigating if and when we go back down to the District Court to litigate the extensive redactions. You agree that there's going to be some more litigation. Oh, yes. So you don't think that it satisfies the collateral order doctrine? I do not. And you don't think that it satisfies the final judgment rule? I do not. Now what about mandamus? For the same reason it doesn't satisfy the third prong, the third prong whether or not this decision is effectively unreviewable. Now I heard Ms. Dorsey say they've only opposed on the first prong. That is not true. We oppose on the third prong as well, specifically at page 12 of our reply brief where we argue this. And this is prefaced with, the government contends immediate appellate review is essential to prevent disclosure of the videotapes. That's the third prong. And our response was the District Court, and I'm reading from the brief now, the District Court's order keeps the videotapes under seal until the court issues an order for their disclosure pursuant to an approved proposal. Once the District Court issues that order, the government can prevent mootness by commencing an appeal from that order and seeking an immediate state of disclosure to an independency of that appeal. These videotapes will not see the light of day until the last appellate court that is asked to look at them approves it. Period. There's no danger of effective unreviewability. And for that reason, there's no basis for mandamus relief either. What about the time frame? What if, going back to what the judge said, I said one week, I need one week, and they say we can't physically be done? I mean, would you be amenable to more time, or how would that be worked out for that to happen? We have endeavored to cooperate in every way possible with the government to litigate this case on the merits in a timely and yet fair fashion. Of course we would accommodate a request for more time. They've never asked for that. They do not want to release redacted videotapes. They have taken the position all along that not one frame of these videotapes should ever see the light of day. And I assure you, Your Honors, that there are many, many frames of these videotapes that can see the light of day without endangering national security. Now, I wanted to get to the question of, well, if not a collateral order appeal, why not mandamus review? And it's for the same reason, the lack of the element of effective unreviewability. I'll quote here from M.A. Kellogg, Brown, and Root. This is a 2014 case, 756F3rd at page 388. And it states that the mandamus petitioner must have no other adequate means to attain the relief he desires. It's the same standard. A mandamus relief is available only in response to a cry of pain, a cry for relief. If you don't do something, the cat will be out of the bag. This cat is permanently ensconced in the bag and will not come out of the bag. The reference is really good because we've been using cat out of the bag as the third step of collateral order, Doctor. All right. I want to flush out of the barn. We'll use that for pawn. I always like toothpaste over tooth. That works for me, too. Okay. So the third pawn is just not here. Now, let me get back to the question of whether or not there will be more litigation over the redactions. Oh, yes, there will. We have litigated everything in this case. We have tried on our side, on Mr. Deob's side, we have tried to come to a combination time and again with the government from the very slightest issues to the very most important issue, and we get nowhere. And I appreciate efforts to cooperate for litigation. Did you oppose this day in this case, or would you oppose this day? No. You didn't oppose and you wouldn't oppose? No. No, it's understandable. No, we will be patient. But what we will have to sit through is what Ms. Dorsey said is, yes, no doubt there would be litigation over the specifics of the redaction. And that's why the first pawn isn't present here. We don't have a final order. We don't have the court's last word on the subject. There's lots left to be done here. I think we're over time. I just had one more. I think now I could be wrong as to whether it's amnesia, but we have had a case post-Mohawk where we did allow review on essentially the same rationale that the government is arguing here as I see it. How do you distinguish the interlocutory jurisdictional decision in amnesia? In amnesia? That was post. It didn't talk about Mohawk, which is a little bit of an issue, but there was a task force transfer decisions one. And I said, look, you know, there may be some equivalent around the edges, but the core ruling that these transfer records are going to come out is done and so we can have the case now. Right. Those records would have come out after it was released. These videotapes will not be released. Well, they were going to come out from the order that was being appealed. There was still going to be some haggling about the contours of the final order in that case, and I don't know why the same arguments wouldn't have worked there. Well, wasn't the notion that eventually the train had left the station, if I can go to another metaphor, and there was no stopping it? Well, I mean, metaphors are nice, except they don't hinge to the reality here of, you know, I think what they would say is substantively on the law the train has left the station or the toothpaste left the tube. The district court has said some core part of this is coming out, and I'll let you block out names, faces, uniforms, things on wall, covert communications, and your view may be some unknown more, but the guts are coming out, and I don't think, I assume you don't think, they don't think, or anyone thinks that core ruling is going to change, and I thought that's what was going on in the museum too. It may well change. I think that I recall when Judge Kessler issued that order, she immediately asked the court, will you be seeking a stay? Judge Kessler brought up the notion of a stay before the government could, and the government said, yes, of course we are, and that's the key difference here. It was known from the start. The judge anticipated it. The government asked for it. It was put in place, and we would stipulate to it if asked. Can I ask about a museum? I thought it is true that the documents were to be unsealed immediately, but counsel would have been allowed immediately to say the status of his detainee, and that is the thing that the government was trying to keep secret. Yes, something would have happened. Nothing would have stopped, without the decision, nothing would have stopped counsel from disclosing the fact of the detainee's status. Yes, and that would have been the deed that could not be unknown. And we had to do the stay in that case, not the district court. I'm sorry? We had to do the stay in a museum. Yes, yes, and I'm sure no doubt if Judge Kessler had not done the stay, this court would have. It's just the way things normally work. Any other questions? Okay, thank you. Thank you. May it please the Court. Dave Schultz on behalf of the press intervenors. I was going to focus on the merits of the jury. I would like to know what the intervenor's view is about jurisdiction. The intervenor's brief doesn't really question that there's no, it seems to agree that there's no final order and the collateral order doctrine doesn't apply and seems to rest on mandamus. What is your position here? We essentially took the position that the government has in both mandamus jurisdiction here. They've kind of made their bed and they should lie on it. And it's our position also, one other point that hasn't been adequately brought out here, that it's not just a question about Mr. Diab's rights and the government's rights here. There is a public right at stake here that is extremely important, and it's a right of contemporaneous access to judicial records. I haven't seen that argument made in the briefs at all. Now I'm hearing it for the first time. Because it was argued that there was mandamus jurisdiction, and one way or the other this court was going to reach the merits. That is quite an ability to foresee what we normally do here. Because, I don't know, when I was in practice, I wouldn't have already assumed the government's going to come out, that the court's going to come out that way. Fair enough, Jeff. How did you know we were going to decide the merit? We haven't decided that yet. The government has taken the position that there is a legal issue that has been finally resolved, the question of whether, this is a pure legal question of whether classified information is important. Well, our habit isn't to do whatever the government tells us to do. So if you want to argue the jurisdictional argument, and you think there is jurisdiction here, you need to tell us. I think that there's mandamus jurisdiction to hear that issue, and that it's important for the court to exercise it because of the public, the important public right here. We're talking about videotapes that Mr. Diab and his counsel have contended established illegal conduct by government employees, 28 videotapes that the district court watched, and after watching them said it provided insufficient evidence to initiate an injunction. You're not seeking mandamus. This is an argument by which you might seek mandamus, not an argument by which the government might seek. Well, the government takes the same position, that it's entitled to review of the. Yes, but they don't take the position that they're entitled to immediate disclosure of the documents. That's your argument. So I'm a little confused how those fit together. Well, that's the argument. We negotiated with the government that we would stipulate to a stay as long as the government agreed to expedite the appeal. Because our view is that we need to get this done. We took the position in front of the district court. And, you know, this is a case where the president has invited public debate on this. He's asked the American people. When you talk about the right of public access, which you're advocating here, I assume you think that's a right of public access to the material on these videotapes post-redaction process, or are you suggesting there shouldn't be any redactions at all if you get the whole thing? We haven't appealed from the court's order authorizing redaction. And so your position is that we're entitled to the videotapes that the court applying the proper standard. We believe the district court applies the proper standard. Post-redaction, the only public right you're seeking to vindicate here or the press right you're seeking to vindicate here is access to post-redaction. We have no objection to the narrow redactions the district court found appropriate based on the record before. Okay. So there is no basis whatsoever for, I guess I'm not understanding what your public access argument is, because I think it sounds like you recognize there's not even a right to public access now or today. You have to go through this redaction process. Which is why it's important for this legal issue to be resolved, because the government is stringing this out and stringing this out at a time when the American public. They're not stringing it out. They want us to decide it now. I'm sorry? They're not stringing it out. They want us to decide it now too. Well, and we think that's correct. I mean, what's going to happen is down below, they haven't started these redactions. You know, they said it's going to take them weeks and weeks to do the redactions, and they haven't started them. Did you agree to the stay or did you oppose the stay? We agreed to the stay on the condition of expedition. Okay. But then you can't really complain that they haven't started the redaction process you agreed could be stayed. We had an expectation that this legal issue would be resolved and that that was the quickest way to get this to a conclusion. Understood, Judge. Can I ask you now moving along to the merits? Sure. You said you thought that the district court applied the right standard. So I read the district court as applying the rational and plausible standard. Is that the standard you think is the right standard? Here's what I believe the district court is doing, which I think is totally correct and totally consistent with decades of settled precedent. The district court said there is a First Amendment right of access to civil proceedings, including habeas proceedings, that that right of access, as this court said in Robinson, extends to the judicial records relating to that proceeding, and that the press enterprise to standard governs. That that says that the public is entitled to see this evidence unless the government shows a compelling interest, that there is a substantial probability of harm to that interest, and that there are no adequate alternatives. That's the standard that governs this. Now, it is true that when the interest alleged is national security, the executive branch is entitled to some deference. And what the district court did, which I think is appropriate, is to say that that deference is built into the standard that we've used in the FOIA cases of requiring not clear and convincing evidence or not even beyond a reasonable doubt that this harm is going to happen, but simply that the government will be put to the task of plausibly and logically establishing through specific facts that there is a very probable. This is very helpful, and I wasn't clear about this, so I want to be clear. So someone might have thought that you were arguing for the substantial probability test, as in press enterprises, to actually be applied to this, regardless of whether it was classified. But what you are, in fact, telling me is that in a situation of a classified document, the substantial probability test becomes the rational or plausible test. Is that right? No, Judge, I think it's a little refined from that. I want to be clear. The plausible and logical test is a test that affords deference to the government's predictive estimates. And where national security is the compelling harm for which the government has the burden of showing a substantial probability that it will be threatened, that in weighing the government's evidence, it is appropriate to apply deference through the substantial. So the government's task here, as I believe what the district court said, was to provide through plausible and logical evidence a demonstration that there was, in fact, a substantial probability of harm to national security. So this is getting clearer. So the requirement for secret, which is actually for all classifications, which is only reasonable probability of something, right, reasonable probability of different degrees of harm but still only reasonable, that's not enough even if it was logical and plausible for the government to believe that it should be classified on that basis. That's your position. That's correct. And just to be clear, you know, the First Amendment standard is a different standard than is it properly classified. In the FOIA context, that's the question. Does the district court find that this is properly classified? So that would effectively unclassify all classified documents. No, it would not. It would absolutely not do that, Judge Wilkins. The government makes that argument, but let me just explain. Why wouldn't it? Unless the government can meet your higher burden, but basically the fault that we start out with is that all classified documents no longer are classified where there's a First Amendment right. The basic problem that the government has, the error that it makes, which is a huge issue, and this court really needs to set this right because it's a question that goes to the functioning of our democracy, you know, that this First Amendment right of access is a right that is a structural right. That's what the Supreme Court said. It's there to provide confidence that the judiciary is working properly. It's there to provide democratic oversight of government activities. The government confuses. Hang on, hang on. It's not there to provide government oversight, oversight of government activities. It's a right of access to court documents. There's no First Amendment right to documents in the executive or legislative branches' hands. Absolutely. All right, so it's not a FOIA, let's oversee the executive branch. That's absolutely correct, Judge. The point I was trying to make, which Justice Brennan makes very clearly in the Globe case, that the access right to judicial proceedings and records encompasses within it. It derives from under the First Amendment the public's basic right to know what the government is up to. That's the reason the court found the right to exist in the judicial context. And where the government is a party, such as in a criminal case. It keeps saying what the government's up to. I think it's just to see what happened in the judicial branch, in the court. Correct. That's where it derives. So it would apply even if the government wasn't a party? Would it apply to trade secrets that are submitted in a motion in a patent case? That's correct, Judge. So trade secrets now, someone has to show a substantial probability. The Coke formula comes out unless they have a substantial probability. I guess they would say they would meet that. Let me just try to be clear about what I'm saying in terms of the purpose of the First Amendment. What Justice Brennan said in the Globe case, this is 457 U.S., it's 604 and 05. He said the First Amendment serves to ensure that individual citizens can effectively participate in and contribute to our republican form of self-government. Meaning we have to know certain facts if we're going to elect people that represent our views. And we went on to say that the access right that the court articulated in Richard's newspaper exists, they found it to be constitutionally embedded in the First Amendment, to ensure that the constitutionally protected discussion of governmental affairs is an informed one. Now it's right that the court said that this isn't a broad access right to everything in the government. It's a right of access to judicial records. But where those judicial records relate to the conduct of other government officials, the First Amendment concerns are only heightened. But it's also never been held to be an unqualified right of access to court records. That's correct. And that's the substantial probability of harm test. Right. Well, I think you don't get to that if there's not a tradition of access at all. And that's why I'm trying to understand how we apply this to categories of documents. Here classified information could be trade secrets, could be attorney-client information, all kinds of protected information that only comes into the court system with a promise that an individualized determination that it shouldn't be public and a promise that it isn't going to be public as part of the court proceeding. And, again, I think the application of the standard, as the Supreme Court articulated it, answers that. And, again, Globe is the key case here. The argument in Globe, which involved the question of whether the Massachusetts legislature could, by statute, require a closed proceeding any time a juvenile victim of a sex crime testified. Right. But see, the issue there was in a mandatory exclusion. And what the court said, I don't want to overread the decision there, left open the ability to have individualized balancing determinations as to – it didn't address the right of access to information that on an individualized basis is determined to meet by the court to be appropriately protected. Right. So it just doesn't answer the question of access. Sorry. What the court said specifically was that it requires an individualized test. And in footnote 13, it explains and says, you know, Massachusetts just misunderstands how this right works, which is the same misunderstanding the government has here. We don't say that this information typically comes in secretly or even that there was a history of juveniles testifying in secret and, therefore, say that those types of proceedings can be closed. Proceeding itself has a history of openness, criminal trials. Here are the proceeding itself, civil cases, or even habeas. If you want to take habeas alone, N. Ray Milligan says it was done in open court in 1866. So the proceeding is what's important, and then the documents that relate to that proceeding are subject to the access right. And just as in Globe, where the court said it may well be that most of the time this stuff satisfies the test and will be sealed, you still apply the test. You don't say this is all exempt, there's no First Amendment right. The court has an affirmative role to apply the standard and decide if the specific classified information, which is a record of the court, meets that standard. Again, just to be clear on the assumption that you're right, that the First Amendment applies, your test is that it has to be rational and plausible, logical and plausible, whatever the phrase is, that there's a substantial probability of harm to national security. So does that mean we would be overruling what we said in McGehee? So in McGehee, which was a case in which the CIA officer actually, it was his own document, right, it was material he wanted to disclose, and the court said the test is courts must assure themselves that the reasons for classification are rational and plausible ones. It didn't say that we vet, because the reason for classification here is only a reasonable probability. So we would have to overrule McGehee. Absolutely not. Why not? Because McGehee was a case, while he was asserting a First Amendment right, which is what we're asserting here, he was asserting it in the context of having signed a contract saying that he waived that right if the information was classified. So the issue the court was addressing there was essentially the same question as in a FOIA case. Has the government demonstrated that something is properly classified? It is not the issue that we have here. What we have here is what was in Enroy Washington Post, the Fourth Circuit case, where they very clearly said that two classified affidavits submitted in support of a sentencing were subject to the present enterprise standard. It's the same issue. What do you do with the Amesian versus Obama case, where I see no evidence that we were applying a substantial probability of harm test and, in fact, page 497 is filled with courts aren't supposed to substitute their judgment for the executive. As long as they come forward and given particularized and individualized showing, like the Supreme Court would require, we defer their judgments about whether something is going to harm national security. Sure. Amesian was, again, a case like more akin to McGehee, where the lawyers who were asking for permission to release information were subject to a protective order that they had consented to. They had agreed with the government that they would treat the information in a certain way. So there is really a different question there. It's a question more akin, again, to McGehee. They're saying we should be allowed out from under this because there's no reason to keep us under the protective order. And so it's a more narrow question where they had consented to those restraints. Well, Mr. Dieb's counsel consented to these restraints as well. Mr. Dieb's counsel consented to these conditions for access to information, too. But the press hasn't. The press hasn't. The public has a right to know what happens in court proceedings. Right, but that would apply to Amesian as well, then, would it not? That case could involve an assertion by the public of their rights. There's lots of cases. The parties didn't brief these cases, but there's cases involving criminal proceedings and sentencing and access to the pre-sentence report prepared for the defendant. So it's a sentencing proceeding. There's a public right of access. It's the key document that the court is going to rely upon to make its decision about what sentence to give that individual. But yet there's lots of cases. Those are always filed under seal, and there's lots of cases that the court looks at kind of individually whether there's a need to access that document, and the public loses most of those cases when the press says, we want the pre-sentence report. I would make two responses, Judge, and this really goes back to the question you asked earlier about are we making all classified information in court public. Just because the First Amendment access right applies does not mean it becomes public. There are many instances where there are compelling reasons to keep it secret. So, for example, the government posits this scenario where all FOIA cases are going to require documents to be released if they're looked at in camera. The answer is no, and it's because there is a compelling reason to keep information secret when secrecy is essential for the court itself to function. No one is saying that this First Amendment right of access makes it impossible for courts to function. So in a trial, if a piece of evidence is being offered and someone says you can't show that to the jury, that was a true client information, it was produced in error, whatever, there's a sidebar. There may well be reason for the judge to look at that and keep that confidentiality and make that determination, and that's a compelling reason it overcomes the public's right. The same thing would be true in a FOIA case. If the judge has to look at a document to decide whether FOIA applies, that is a compelling reason. That's different from, that's where the process itself is just to decide whether something should be, you know, the entire litigation process is about whether this should be released or not under statute. That seems very different. But what do we do with pre-sentence report information or trade secret information that comes in, and it's the basis for decision, or it's a factor in decision-making, maybe a very important factor in decision-making. Does everybody who now litigates cases involving trade secrets have to worry that their competitor who has the same First Amendment right of access as you can say, hey, I'd like to see that too? Sure, and it's litigated all the time, Judge, and courts regularly uphold secrecy of trade secrets. Under substantial probability tests? Absolutely. There's a whole series of cases in the Seventh Circuit where parties have entered into sealing orders in the course of discovery, and the Seventh Circuit has been very clear, look, when it comes to court, the public has a right. And that doesn't mean it's disclosed. It means the standard is applied. That's the rule of law. Do you have cases where someone said, a competitor said, hey, I've seen company A and B fighting over patents, gazillions of dollars. I'm company C. I'd like to break into that business. I want to see that information on file in the First Amendment right of access to that trade secret information. Do you have a case where they said it will be released absent substantial probability? As I stand here right now, I don't. But if it is a court record that was introduced in the evidence the public right of access attaches to, that standard applies. The Seventh Circuit hasn't used the substantial probability standard in the context of pre-sentence reports. They explicitly rejected it. I don't know circuit for circuit as I stand here. Some circuits have said that the First Amendment right of access doesn't apply to pre-sentence reports because they looked at a history of logic analysis and it doesn't apply. So you need to look at the history. The Third Circuit, I know, has said they do apply. I'm not familiar with the Seventh Circuit. I'm sorry, Judge. Are they right if they've done that? Because it sounds to me like they're looking at a history and experience of access to documents rather than, of course, there is an access to sentencing proceedings. To a type of proceeding. No, but clearly there's a history and experience of access to sentencing proceedings, but it sounds like the Seventh Circuit has said, yeah, that's fine, but not to this type of these documents. I don't expect that on the Seventh Circuit. But you're not agreeing that that's the test, right? I'm sorry? At least I know some of your amici don't think that that's the test. Do you think that that's the test? Which amici don't think that's the test? I think the law professors, but as far as looking at the logic and experience of a particular with respect to a document versus a proceeding. I don't think anyone argues that we look at the experience and logic with respect to a document, except where the document is. Didn't you just say that certain courts have done that with respect to a pre-sentence report? My understanding is, Judge, that some courts have looked at the sentencing process and found that the same public right of access doesn't attach to that process, and therefore the reports wouldn't be. Some have analyzed it, therefore, just under a common law standard. Some courts have gone the other way. The Third Circuit I'm familiar with because I've litigated cases there. They've said that the First Amendment right of access does attach to that proceeding. And what we're talking about here is a civil proceeding, and it's just fundamental to get these basic principles right because they go to the separation of powers, they go to what the public right of access is. And, again, it's like because the public right of access applies does not mean that it always prevails, but it means that there is a standard that must be met. And when a member of the press or public comes in and wants to see a document, that standard has to be applied. And it's not just to be clear, your First Amendment right isn't limited to the press. It's anybody. The court has been quite clear that the press has no special rights. Right, so anybody. Okay. Thank you. Excuse me, Your Honor. May I take a moment to clarify a point? You'll get a – No, you won't. No, we don't get a rebuttal, but that is a point of view. Really quick. Really quick. When the court asked if we'd oppose the stay, there were two stays issued, October 3rd and October 9th. They were stayed on release. We did not oppose that. Subsequently, the government asked for a stay of the entire order, including the redaction order. We did oppose that. We did not want a stay of the redaction process because we felt that going through the process would demonstrate that this could be done in a manner that protects national security. Thank you for clarifying. Thank you for clarifying. I know the government doesn't have any time, but we'll give you some more time because we give everybody time here. Thank you, Your Honor. I believe I have been told that I misspoke that in the district court we did ask for more time for the redaction. Did you get an answer to that or the answer was a stay and it was moved? I believe it was a stay and it was moved. One point I'd like to make on the Mandamus point, Your Honors, is that really here there is no adequate relief if we can't have a collateral order appeal because it's not just the administrative burden of going through the redactions, but it's also a diversion of resources from DOD, military resources, and the personnel it uses for that process, which are being used to prepare other declassification and classifications. But that's true in every case, right? There's always, whether it's the government or private attorneys, it's always required discovery and everything else that has to happen before an erroneous decision can be overturned. There's going to be a diversion of resources. Well, I think, Your Honor, what I'd point to maybe for the closest analogy is where courts have granted Mandamus to stop depositions of heads of agencies and things like that. Do you have a head of agency? Is the Secretary of Defense actually reviewing these documents? No, he's not, but it's similar things in that I think it's still a similar analogy in that an agency head has limited time and resources. If your argument were that SEAL Team 6 and other people at the end of the spear have to come back from whatever they're doing to review these documents, I think you would have a very good separation of powers argument. But what you're talking about here is diversion from one set of classification reviews to another. And obviously the role of the declassifiers is important, but if we make an exception for this, we're going to have this in every single case where somebody has a good reason why they shouldn't have resource allocation. Well, just one more point I think I'd make on that, Your Honor, and then I'll move on, is that in the Gitmo, in the Guantanamo context, this is a unique set of circumstances we're dealing here with both in terms of litigation and the resources committed, and I think here that warrants mandate. Can I be clear? Are you suggesting that there is any national security reason or foreign relation consequences from this diversion of resources or simply that there was a Guantanamo-specific resources and demands? Well, I mean, just in terms of DOD obviously has limited resources overall, and when they have to divert resources from other activities, it takes away from other. But, I mean, we don't have anything specific on the record to implicate national security concerns by diversion of resources. The one other point I'd like to make, Your Honors, is on the merit. It is very clear here that even if the rational and plausible were the standard to apply, the district court did not apply that here. It's clear that the opinion talks about the substantial probability of harm. The opinion repeatedly notes that the government has not proved the substantial probability of harm. Do you understand the test to be a rational and plausible basis for finding a substantial probability or that the district court replaced rational and plausible with substantial probability? I think I'm not sure there's a difference there, Your Honor, but I think the latter is what happened. And if the court had applied the rational and plausible, I think it's clear here that the case would not have been ordered and sealed. But it's clear that the district court went outside that rational and plausible and looked to other evidence, looked beyond the government's declaration, and the court made its own judgments weighing the evidence and deciding. And that even if the rational and plausible was the standard to apply, that was just not correct here. If the court has no other questions, we would ask the court to reverse your session. I take the matter under submission. Thanks to both sides.
judges: Garland, Millett, Wilkins